32 P.3d 790 (2001)
130 N.M. 781
2001-NMCA-071
STATE of New Mexico ex rel. CHILDREN, YOUTH AND FAMILIES DEPARTMENT, Petitioner-Appellee,
In the Matter of Melissa G. and Katie B., Children,
and Concerning Michelle B., Mauro G., and Mario R., Respondents-Appellants.
No. 20,721.
Court of Appeals of New Mexico.
August 1, 2001.
*792 Angela L. Adams, Chief Children's Court Attorney, Daniel J. Pearlman, Children's Court Attorney, Santa Fe, NM, for Appellee.
Judy A. Pittman, Sanders, Bruin, Coll & Worley, P.A., Roswell, NM, Guardian Ad Litem.
Jane Bloom Yohalem, Santa Fe, NM, for Appellant Michelle B.
Nancy L. Simmons, The Law Offices of Nancy L. Simmons, P.C., Albuquerque, NM, for Appellant Mauro G.
Richard L. Kraft, Kraft & Stone, LLP, Roswell, NM, for Appellant Mario R.

OPINION
ARMIJO, Judge.
The opinion filed on May 22, 2001 is withdrawn and the following substituted therefor.
{1} This case tests the reasonableness of a parent's conduct when confronted with the reality of a child's abuse perpetrated by a third party. Michelle B. is the parent of two daughters fathered by different men: Melissa, age three, whose father is Mauro G., and Katie, age six, whose father is Mario R. In this consolidated appeal, Michelle (Mother) appeals the adjudication of her three-year-old child, Melissa, as neglected, and also appeals the district court's judgment changing custody of Melissa's sister, Katie, from Mother to Katie's father, Mario. Mother raises three issues on appeal: (1) the court's finding that Mother neglected Melissa is not supported by clear and convincing evidence; (2) there is insufficient evidence of a change of circumstances to support the court changing custody of Melissa's sister, Katie, from Mother to Katie's father, Mario; and (3) the court erred in failing to implement safeguards, pursuant to the dispositional provisions of the Children's Code, designed to protect Melissa from further sexual abuse by her father. We reverse the district court adjudication of neglect. We reverse and remand the matters relating to Katie's change of custody. We determine that Mother lacks standing to challenge the district court's failure to comply with certain mandatory provisions of the Children's Code, as those provisions relate to Mauro.

FACTUAL BACKGROUND
{2} The issues relating to the neglect adjudication concern Melissa and her biological father, Mauro. The issue relating to Katie's change of custody concerns Katie and her biological father, Mario.
{3} At all relevant times, Melissa was three years old. She has been diagnosed as having a severe expressive language problem and is developmentally delayed. She is a "special needs" child.
{4} Shortly after Melissa's arrival at school on February 18, 1999, she was brought to Valerie Sharp, her pre-school teacher, by the school's speech therapist who had been working with her. Melissa lifted her shirt, revealing bruising across her ribs and stomach. Without prompting, the child stated: "Daddy did it." A further examination of the child by the school nurse revealed bruising in and about the child's chest, legs, and thighs. The bruising in the area of the ribs included what appeared to be a well-defined impression of three fingers. The child was subsequently examined by Phyllis Tulk, a certified family nurse practitioner, who diagnosed her as having been the victim of a sexual assault. The medical examination revealed severe bruising in the child's vaginal and rectal areas, a V-shaped laceration near the vagina, and rectal tearing. These injuries were caused, in the opinion of the nurse, by penetration, or attempted penetration, by a male. Ms. Tulk described Melissa's demeanor during the examination as quite unusual; that is, she described Melissa as remaining silent and willingly submitting to the examination without protest. In the opinion of the nurse, most young children who undergo this type of examination resist or protest in some manner. In addition to the examination, she collected bodily secretions for testing as to the presence of sperm and venereal diseases. These cultures were lost and the results were never obtained by Children, Youth and Families Department (CYFD) or police authorities. In the opinion of Ms.Tulk, *793 the injuries were inflicted no more than seventy-two hours prior to her examination.
{5} At all relevant times, Melissa resided with Mother and her older sister, Katie. Melissa's father, Mauro, was the suspected perpetrator. Although he and Mother were divorced at the time of the assault, he sometimes occupied the home and exercised visitation rights with the child. His visitation with Melissa also included visits with Katie. Because of her language problems, the psychologist who examined Melissa testified that he was unable to understand much of what she said to him during his examination and he further reported that she has difficulty communicating her thoughts and ideas to others.
{6} As noted above, medical personnel determined that the assault occurred within seventy-two hours of her examination. The record discloses the following with respect to the child's activities during that time. On February 16, 1999, Melissa attended school, as did Katie. After school, Mother and the children visited a park where the children played. They remained together for the rest of the day. Mother bathed both children that evening. No injuries were observed by Mother. On the following day, February 17, the children attended school, after which time, Mauro took the children out for approximately four hours during the afternoon and early evening. Mauro returned the children home at approximately 8:00 p.m. Upon their arrival, Mother was in bed, experiencing what she described as severe back pain. She admitted having taken prescribed pain medication that evening. Prior to the discovery of the injuries by school personnel the following morning, Mother claimed to have had no knowledge of the assault or injuries.
{7} Upon being advised of Melissa's condition by school personnel, CYFD intervened and both Melissa and her sister, Katie, were temporarily placed in foster care. A petition was filed in children's court alleging that Mauro and Mother had abused and/or neglected Melissa. During the pendency of this proceeding, Katie's father, Mario, who resided in California, filed a motion in domestic relations court seeking a change of custody based upon changed circumstances. Without objection from any party, Judge Alvin Jones consolidated Katie's custody case with the abuse/neglect case involving Melissa.
{8} On July 21, 1999, the district court entered a judgment, determining that Mother neglected Melissa and further determining that a change of circumstances existed sufficient to warrant a change in Katie's custody from Mother to her father, Mario. The judgment also determined that:
Respondent Mauro G. has entered a plea of no contest with respect to the allegations of the petition insofar as the child, Melissa G., is a neglected child as defined in the Children's Code insofar as the child has been sexually abused, when the child's parent, Mauro G., knew or should have known of the abuse and failed to take reasonable steps to protect the child from further harm, pursuant to [S]ection 32A-4-2(C)(3).
This appeal followed.

DISCUSSION
{9} With respect to the allegations pertaining to Mauro, the alleged perpetrator of sexual abuse upon Melissa, the court permitted him to enter a plea of no-contest. Mother's objections to that plea are addressed separately below.

I. Neglect proceedings related to Mother

{10} The matter proceeded to trial as to the allegations that Mother neglected or abused Melissa. At the close of evidence, she was found to have neglected Melissa essentially because she did not discover the injuries due to her dependency on prescribed medication and its effects upon her own well-being. In addition, Judge Jones, sitting as the domestic relations court, awarded custody of Katie to her natural father, Mario, on the basis of changed circumstances. The change in Katie's custody is addressed separately below.
{11} We apply the clear and convincing evidence standard of review in addressing Mother's claim that the finding of neglect is unsupported in the record. As this Court noted in In re Candice Y., the judgment will be upheld "if, viewing the evidence *794 in the light most favorable to the judgment, a fact finder could properly determine that the clear and convincing standard was met." In re Candice Y., 2000-NMCA-035, ¶ 10, 128 N.M. 813, 999 P.2d 1045 (citation omitted).
The clear and convincing evidence standard requires proof stronger than a mere "preponderance" and yet something less than "beyond a reasonable doubt."
For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true.
The function of the appellate court is to view the evidence in the light most favorable to the prevailing party, and to determine therefrom if the mind of the factfinder could properly have reached an abiding conviction as to the truth of the fact or facts found.
In re Adoption of Doe, 100 N.M. 764, 767, 676 P.2d 1329, 1332 (1984) (citation omitted). In conducting our review, we indulge all reasonable inferences in support of the verdict and disregard all inferences or evidence to the contrary. See In re R.W., 108 N.M. 332, 335, 772 P.2d 366, 369 (Ct.App.1989). It is for the finder of fact and not for the reviewing courts to weigh conflicting evidence and decide where the truth lies. See id. Questions of law are reviewed de novo. See Martinez v. Martinez, 93 N.M. 673, 676, 604 P.2d 366, 369 (1979). Within this framework, we consider and ultimately conclude as a matter of law that the evidence in this record was insufficient to sustain a finding of statutory neglect as to Mother.

II. The finding of neglect as to Mother is not supported by clear and convincing evidence.

{12} Mother urges that under the facts of this case, the circumstances of Melissa's sexual abuse by another did not rise to the level of statutory neglect as to Mother. We agree and we recite those circumstances in further detail below.

A. Section 32A-4-2(C)(3)

{13} Mother was found to have neglected the child based upon two independent grounds stated by the court. We address the sufficiency of the evidence as to each ground, in turn.
{14} The district court concluded, pursuant to NMSA 1978, § 32A-4-2(C)(3) (1997) (currently Subsection 32A-4-2(E)(3) (1999)), that Melissa was sexually abused when Mother knew, or should have known, of the abuse and failed to take reasonable steps to protect the child from further harm. We agree with Mother that evidence in the record before us does not support this finding. We are unable to find any evidence in the record, nor are we directed to any, that Mother had knowledge, or should be imparted with knowledge by circumstance prior to the assault, that the child's father or another intended to injure her child. Further, the record is silent with respect to any evidence that Mother knew, or had reason to suspect, that Melissa's father or another had a propensity to sexually abuse the child. We therefore hold that the court's finding of neglect premised on this ground cannot be sustained.

B. Section 32A-4-2(C)(2)

{15} The district court concluded, pursuant to Section 32A-4-2(C)(2) (currently Subsection 32A-4-2(E)(2)), that Melissa was a neglected child insofar as she lacked proper parental care, control, and supervision.
{16} The term "neglected child" is defined in Section 32A-4-2(C)(2) as a child "who is without proper parental care and control or subsistence, education, medical or other care or control necessary for the child's well-being because of the faults or habits of the child's parent ... or the neglect or refusal of the parent ... when able to do so, to provide them." To find that Mother neglected Melissa under this provision, the court must have been presented with clear and convincing evidence of Mother's culpability through intentional or negligent disregard of Melissa's well-being and proper needs. In re Adoption of J.J.B., 117 N.M. 31, 38, 868 P.2d 1256, 1263 (Ct.App.1993) (citing In re Doe, 98 *795 N.M. 198, 201, 647 P.2d 400, 403 (1982)) (rev'd on other grounds by, 119 N.M. 638, 894 P.2d 994 (1995)).
{17} CYFD argued below that Mother failed to exercise the level of care and supervision necessary to discover during the night of February 17, or morning of February 18, that Melissa had been sexually assaulted and that this failure was caused at least in part by Mother's "extensive use of debilitating pain medications." Mother does not contest that on the evening of February 17, she was experiencing severe back pain due to a chronic medical condition known as fibromyalgia, and that she took prescribed pain medication that evening. She was resting in bed at 8:00 p.m. when the children and Mauro arrived. Mauro remained in the home for a while and put the children to bed. During the night, Melissa wet the bed, as she often did. Mother got up and changed her in the dark, as she routinely did. The following morning Melissa awoke and dressed herself, as she had learned to do in pre-school. According to Mother, Melissa did not cry-out during the night, or complain of any problem in the morning.
{18} The district court's finding of neglect, pursuant to this section of the Code, was apparently premised not only upon Mother's failure to discover the injuries, but also by circumstances present in her life at the likely time of the assault. While we acknowledge that the district court expressed its belief that Mother's testimony was not credible with respect to her failure to notice the injuries prior to discovery by school personnel, we nonetheless note the absence of any evidence to the contrary. "A finding that the testimony of a witness is not credible does not amount to a finding that the opposite of that witness's testimony is true." Varbel v. Sandia Auto Elec., 1999-NMCA-112, ¶ 21, 128 N.M. 7, 988 P.2d 317. Further, and perhaps more importantly, no evidence was presented by CYFD that Mother was addicted to, or incapacitated by, her pain medication, or that she had reason to believe that the children were at risk when in the custody of Mauro.
{19} We compare the present case with previous cases where we affirmed the district court's finding of neglect. In re Doe, 98 N.M. 198, 201, 647 P.2d 400, 403 (1982) (evidence that mother had three children that were adjudicated delinquent, along with expert psychological testimony that she would have difficulty raising any child, constituted clear and convincing evidence that mother neglected her child); In re Candice Y., 128 N.M. 813, 999 P.2d 1045, 2000-NMCA-035, ¶ 10 (clear and convincing evidence of mother's neglect included the videotaped statement of the child that she was molested by her stepfather and the stepfather's admission, even though child and stepfather later recanted their statements); In re Vanessa C., 2000-NMCA-025, ¶¶ 26-30, 128 N.M. 701, 997 P.2d 833 (evidence of continued drug abuse, domestic violence, criminal involvement, and failure to comply with a treatment plan proved by clear and convincing evidence that mother neglected children); In re Termination of Parental Rights of Eventyr J., 120 N.M. 463, 468-70, 902 P.2d 1066, 1071-73 (Ct.App.1995) (evidence that the mother had locked her children out of the house at night, failed to provide needed medical attention, left her children alone for long periods of time, and exposed them to dangerous situations constituted clear and convincing evidence of neglect). Unlike the foregoing cases in which there existed a history or pattern of child neglect or abuse, there is no evidence in the present record which suggests that Melissa was not properly cared for by Mother prior to the assault. We find relevant the circumstances of Mother's illness on the day in question. That Mother was ill and required bed rest at the time that the children were returned home by Mauro and did not dress Melissa the next morning, should not be viewed as an indication of parental neglect.
{20} There was insufficient evidence presented below to put a reasonable parent on notice that something was amiss. We conclude that the record in this case does not support, by clear and convincing evidence, a finding of neglect as to Mother.

III. Transfer of Katie's custody from Mother to Katie's father, Mario

{21} Mother argues that the court abused its discretion in awarding custody of Katie to *796 her natural father in California because there was no material change of circumstances. She also argues that the court erred in consolidating Katie's custody case with Melissa's abuse/neglect case.

A. The court acted within its discretion in consolidating the cases.

{22} The court had the authority to consolidate the two cases. See Rule 1-042(A) NMRA 2001 ("When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated[.]"). The best interests of the child standard is paramount under domestic relations law and the Children's Code. Mother has failed to point out how the court abused its discretion in consolidating the two cases. We find no error in the court's action.

B. The court abused its discretion in changing Katie's custody.

{23} Mother argues that because there is insufficient evidence to sustain a finding of neglect as to Melissa, no changed circumstances exist sufficient to warrant removal of Katie from her care. Although evidence of sibling abuse or neglect may be one consideration in assessing whether changed circumstances exist sufficient to warrant a change in custody, it is not the sole consideration or determining factor. In addressing Katie's change of custody, we look to whether the court applied the requisite statutory guidelines.
{24} Child custody may be properly modified "upon a showing of materially changed circumstances affecting the best interests of the child." Jeantete v. Jeantete, 111 N.M. 417, 418, 806 P.2d 66, 67 (Ct.App. 1990). "We will overturn the trial court's decision only for abuse of discretion, and we will uphold the court's findings if supported by substantial evidence." Thomas v. Thomas, 1999-NMCA-135, ¶ 10, 128 N.M. 177, 991 P.2d 7.
{25} The criteria which must be considered when modifying a custody order are set forth in NMSA 1978, § 40-4-9(A) (1977). They include, in pertinent part, the following:
In any case in which a judgment or decree will be entered awarding the custody of a minor, the district court shall, if the minor is under the age of fourteen, determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including, but not limited to:
(1) the wishes of the child's parent or parents as to his custody;
(2) the wishes of the child as to his custodian;
(3) the interaction and interrelationship of the child with his parents, his siblings and any other person who may significantly affect the child's best interest;
(4) the child's adjustment to his home, school and community; and
(5) the mental and physical health of all individuals involved.
{26} Our courts have "`a strong tradition of protecting a child's best interests,'" and a district court "has broad authority to fashion its rulings in the `best interests of the children.'" Sanders v. Rosenberg, 1997-NMSC-002, ¶ 10, 122 N.M. 692, 930 P.2d 1144 (citations omitted). In the present case, however, the district court made none of the required findings addressing the best interests of Katie. The court did not address the child's relationship with Mother, her sister, her father (Mario), or other factors relevant to her best interests. No matter how compelling the facts of Melissa's assault and injuries, the court was required to assess Katie's change of custody in accordance with applicable statutory guidelines. In this regard, we find it significant that the court removed Katie from Mother's custody and, at the same time, found Mother capable of assuming Melissa's physical care and custody. We find it significant, as well, that the court expressly declined to find that Katie had been abused or neglected by Mother. Under the circumstances of this case, we conclude that the court's failure to apply the requisite guidelines to Katie's change of custody constituted an abuse of discretion.

*797 IV. Mauro's no-contest plea and subsequent proceedings

{27} The court's acceptance of Mauro's no-contest plea and its failure to follow through with dispositional proceedings mandated by the Code frame Mother's next issue. She contends that the district court breached its equitable and statutory duty to safeguard Melissa by its decision to accept the plea and subsequently forego implementation of a treatment plan, and instead, conditionally dismiss the cause as to Mauro.

A. The court did not abuse its discretion in allowing Mauro's no-contest plea.

{28} On the eve of the adjudicatory hearing, Mauro proposed a plea of no contest to child neglect; that is, he would not contest that he knew, or should have known, that Melissa was neglected and/or abused. In making the tender, he did not affirmatively admit that he perpetrated the sexual assault. Through his attorney, he informed the court that he would agree to undergo psychological testing and evaluation "to determine whether or not he needs treatment in that area." The court inquired as to whether Mauro would agree to a treatment plan based on the outcome and recommendations of such tests and evaluations. His attorney replied that he would.
{29} CYFD objected to the plea on the ground that Mauro refused to take responsibility for the sexual abuse, reasoning that treatment cannot be effective or successful unless the person responsible for the abuse admits to it. Melissa's guardian ad litem agreed that the plea should be accepted, citing factors which, in her opinion, potentially cast doubt upon CYFD's ability to meet its burden of proof against Mauro by clear and convincing evidence. Those factors included: Melissa's young age; her documented expressive language problems and other developmental delays; her observed fear of her paternal grandfather expressed following the abuse, which potentially suggested a different individual as the perpetrator of the sexual abuse; and, perhaps, most importantly, the loss or destruction of evidencethe bodily fluid cultures and other samples taken from Melissa during the medical exam. The plea was allowed over the objection of CYFD and Mother.
{30} A trial court has discretion in deciding whether or not to accept a tendered plea. See State v. Mares, 119 N.M. 48, 51, 888 P.2d 930, 933 (1994). We will not disturb the court's exercise of this authority absent a showing of abuse in the exercise of that discretion. See State v. Holtry, 97 N.M. 221, 223-24, 638 P.2d 433, 435-36 (Ct.App. 1981).
{31} Both Mother and CYFD argue that the district court failed to consider Mauro's plea in the manner recognized by Rule 10-307(D) NMRA 2001. Rule 10-307(D) provides as follows: "The court shall not enter judgment upon an admission or approve a consent decree without making such inquiry as shall satisfy the court that there is a factual basis for the admission or consent decree." Because the court failed to ascertain from Mauro a specific factual basis, both Mother and CYFD challenge the validity of the plea. They contend that it remains unclear as to exactly what Mauro did not contest.
{32} In light of concerns raised by the guardian ad litem, the children's court could reasonably permit a plea to a category of neglect, which did not require that Mauro affirmatively admit to having caused the injuries, but which nonetheless triggered other safeguards embodied in the Children's Code. By accepting Mauro's plea under these circumstances, the district court took the first step to protect Melissa's rights and secure her safety. The plea necessarily resulted in an adjudication of neglect as to Mauro and necessarily invoked those additional dispositional processes under the Children's Code designed to assess and implement the treatment needs of Mauro and the child. We conclude that under the circumstances of this case, the court did not abuse its discretion in accepting the no-contest plea. Our review does not end here, however.
{33} CYFD did not appeal this aspect of the court's ruling.
{34} Upon accepting the plea, the court noted that it would, at a later time, convene a dispositional hearing. Although the court *798 convened a hearing on September 30, 1999, it did not follow the mandate of NMSA 1978, § 32A-4-22(C) and (E) (1999), which requires that a treatment plan be put in place and that visitation be determined in a manner consistent with the child's best interest. Rather, at the September 30 hearing, the court declared that Mauro should not have unsupervised visits with Melissa and directed that the matter be dismissed once a visitation order was put into place in the separate divorce action involving Mother and Mauro. In its decision to forego the dispositional phase of this case, the court abandoned the prior stipulation made by Mauro that he undergo testing, a psychological evaluation, and recommended treatment. Mauro does not appeal from the court's ruling. CYFD and the child's guardian ad litem stipulated to the court's order, which proposed to dismiss the cause as against Mauro and directed that further matters be handled in the divorce action. Mother alone attempts to appeal this ruling.

B. Mother's standing to raise matters relating to Mauro's disposition

{35} Mother seeks to appeal the children's court's rulings relating to Mauro, that is, the court's decision to forego a treatment plan and to conditionally dismiss the proceedings as against him. The court's rulings concerning Mauro are set forth in an order filed November 19, 1999. In that order, the children's court enjoined Mauro from any unsupervised visitation with the child and further provided that "This case should be dismissed after Sandra Gallagher, attorney for Michelle (Mother), enters an order in the divorce proceedings, DR-98-364, reflecting the new visitation arrangements between the parties."
{36} It remains clear and certain that the primary and overriding consideration of the court in conducting the dispositional phase of an abuse or neglect proceeding is to protect the safety and welfare of the child. See In re A.H., 1997-NMCA-118, ¶ 8, 124 N.M. 244, 947 P.2d 1064. Toward this end, one important objective of dispositional proceedings is to identify the treatment needs of a parent subjected to the proceeding by virtue of a prior adjudication of neglect or abuse. But it is not only the parent for whose benefit the proceedings are convened. The primary concern remains the safety and welfare of the child.
{37} In conducting our review, we construe the provisions of the Children's Code so that "[t]he child's health and safety shall be the paramount concern." NMSA 1978, § 32A-1-3(A) (1999). A child has a stake in the outcome of every neglect or abuse action and that child's interest in safety and security does not evaporate upon a finding of abuse or neglect as to a parent. Rather, that interest extends through subsequent dispositional proceedings, under the supervision of the district court. The child's security depends on the court overseeing a treatment plan, which identifies, addresses, and attempts to correct those circumstances and conditions which rendered the child abused or neglected. The child has an important stake in the outcome of these efforts.
{38} In the present case, the child was represented by a guardian ad litem in all proceedings below. The record discloses that both CYFD and the child's guardian ad litem stipulated to the rulings of which Mother now complains on appeal. For reasons that are obvious, neither appealed the court's ruling. Mother, alone, attempts to appeal.
{39} Mauro challenges Mother's standing to appeal this issue, arguing that Mother was not an interested party in the abuse and neglect proceeding against him and further argues that she did not seek status as an intervenor in the abuse and neglect proceedings. We do not reach the issue of one parent's standing to challenge rulings and dispositions made with respect to another parent because we find that Mother has failed to preserve this issue for appeal.
{40} In her Notice of Appeal filed with this Court, Mother appealed the court's rulings set forth in the children's court's order of July 21, 1999, which adjudicated Melissa a neglected child pursuant to allegations made against Mother. Her Notice of Appeal was filed prior to the court's later rulings concerning Mauro.
{41} Rule 12-202 NMRA 2001 sets forth the required content of a notice of *799 appeal. The rule provides that a notice of appeal must reveal "each party against whom the appeal is taken." Rule 12-202(B)(2). The appellant is required to attach to the notice of appeal, "[a] copy of the judgment or order appealed from, showing the date of the judgment or order." Rule 12-202(B). This Court has previously held that, "where more than one order by the trial court exists, an appellant has a duty to specify each order in the notice of appeal from which an appeal is taken." Mabrey v. Mobil Oil Corp., 84 N.M. 272, 274, 502 P.2d 297, 299 (Ct.App.1972) (citing 9 Moores' Federal Practice, 203.18). Although notices of appeal are to be liberally construed, a notice of appeal is sufficient to invoke the jurisdiction of this Court only if an intent to appeal can be fairly inferred from the notice. See id. at 274, 502 P.2d at 299 (holding that because the summary judgment between a third party and the defendant was neither specifically appealed from, nor incorporated into the judgment mentioned in the notice of appeal, the third party had no notice that the judgment in its favor was being appealed); Bd. of County Comm'rs v. Ogden, 117 N.M. 181, 184, 870 P.2d 143, 146 (Ct.App. 1994) (distinguishing Mabrey and holding that the notice of appeal was sufficient because the defendant's intent to appeal the denial of a motion could be fairly inferred when appellant attached a copy of the only relevant final judgment, which perfected an appeal from all previous oral or written orders encompassed in that judgment).
{42} In this case, Mother's intent to appeal from the children's court's November 19 order permitting visitation by Mauro and conditionally dismissing proceedings as against him, cannot be fairly inferred from the July 21, 1999 order from which she actually appealed.
{43} Further, Mother failed to avail herself of an opportunity to pursue an appeal subsequent to the filing of her own notice of appeal. It is unclear from the record before us whether Mother or her counsel were given notice of the hearing which resulted in the order of November 19. A copy of that order is contained in the Supplemental Transcript of the Record Proper filed with this Court on November 30, 1999. However, our review of the record discloses that the Supplemental Transcript of the Record Proper contains a Certificate of Mailing made by the Clerk of the District Court for Chaves County on November 24, 1999, therein stating that on that date a copy of the Supplemental Transcript of the Record Proper was mailed to this Court, with copies sent to Mother's trial and appellate counsel. It is thus apparent that Mother's trial and appellate counsel had notice of the filing of the November 19 order with sufficient time in which to appeal that order. Mother did not seek to amend her Notice of Appeal in order that this Court might address the matters relating to the November 19 order, nor did she file a separate notice of appeal. See Rule 12-202(B), requiring that a copy of the judgment or order appealed from, showing the date of the judgment or order, shall be attached to a notice of appeal. For the foregoing reasons, we conclude that Mother did not preserve this issue for review.
{44} On one final note, we feel compelled to address CYFD's argument to this Court, which urges this Court to find error in the children's court's failure to implement a treatment plan for Mauro and to follow mandated provisions of the Children's Code. Despite not having appealed any rulings, and having stipulated to some of the rulings of which Mother now complains, CYFD urges this Court to find that the district court abused its discretion with respect to the handling of Mauro's case. We find these contrary positions troubling. By stipulating to the conditional dismissal of the cause as against Mauro, CYFD, in essence, agreed to forego any future effort to implement a treatment plan for him. By raising these concerns, indirectly, for the first time on appeal, CYFD appears to seek the relief which it failed to pursue and perfect below.

CONCLUSION
{45} For the foregoing reasons, we reverse the district court's determination that Mother neglected Melissa and direct that the neglect/abuse petition be dismissed as to Mother. We reverse, and remand for further proceedings consistent with this opinion, the *800 judgment of the court transferring custody of Katie to Mario.
{46} It is the further Order of this Court that Mother and her counsel shall file a copy of this opinion in any pending, or later filed, domestic or custody cause relating to Mauro and Melissa.
{47} IT IS SO ORDERED.
WE CONCUR: RICHARD C. BOSSON, Chief Judge, JONATHAN B. SUTIN, Judge.