This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-39127

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

>     Petitioner-Appellee,

v.

**MACKENZIE B.,**

>     Respondent-Appellant,

and

**SEAN S.,**

>     Respondent,

and

**DAVID M. and WENDY W.,**

>     Intervenors,

**IN THE MATTER OF J.S.,**

>     Child.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
John J. Romero, Jr., District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

Zimmerman Law, LLC
Shona L. Zimmerman
Albuquerque, NM

Guardian Ad Litem

**MEMORANDUM OPINION**

**HANISEE, Chief Judge.**

**{1}**     MacKenzie B. (Mother) appeals the district court's adjudication that Child was abused and neglected, pursuant to NMSA 1978, Section 32A-4-2(B)(1), (4), and (G)(2) (2017, amended 2018). Mother argues (1) the delay in proceedings warranted dismissal and violated her procedural due process rights, (2) there was not substantial evidence to support the district court's findings of abuse and neglect, and (3) the district court erred in admitting evidence of Mother's drug tests.[1] For the reasons that follow, we affirm.

**BACKGROUND**

**{2}**     Child was born on March 16, 2017, and was taken into custody by the New Mexico Children, Youth and Families Department (CYFD) on June 5, 2017, the same day CYFD filed a petition alleging Child was abused and neglected (the Petition). The basis for the Petition stemmed from a referral received by CYFD, the day after Child was born, alleging that Child was physically neglected by Mother and that Child was drug-exposed at birth. The referral further alleged that after Child was born, both Mother and Child tested positive for methamphetamine.

---

[1]Mother argues as well that the district court erred in relying on Child's "in utero drug exposure" and Mother's drug use in finding Child was abused and neglected. We do not address this argument because the district court made clear that (1) its adjudication and findings were not substantively based on allegations of Mother's drug use and positive drug test, or Child's exposure prior to Child's birth; and (2) it relied on testimony related to the results of Mother's drug tests only to establish Child's course of treatment in the hospital and to show why CYFD had originally become involved with Mother. Mother's argument in this regard is unsupported by citation to the record demonstrating the district court's substantive reliance on Mother's drug use, Child's exposure to drugs prior to birth, or the results from Mother's drug test, and "where a party fails to cite any portion of the record to support its factual allegations, this Court need not consider its argument on appeal." *State ex rel. Child., Youth & Fams. Dep't v. Josie G.*, 2021-NMCA-___, ¶ 15, ___ P.3d ___ (No. A-1-CA-39128, July 19, 2021); *see also Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)).

**{3}** The district court held adjudicatory hearings on the Petition between September 14, 2017, and December 2, 2019. The district court subsequently issued its adjudicatory judgment and dispositional order in which it found Child was abused and neglected. Mother's appeal followed.

## DISCUSSION

### I. Timeliness of Proceedings

**{4}** Mother argues that the length of proceedings between the filing of the Petition and the adjudicatory hearing violated NMSA 1978, Section 32A-4-19 (2009), Rule 10-343 NMRA, as well as her right to due process. Mother specifically contends that "in matters concerning the State's interference with her parental rights, Mother has the right to a speedy resolution as a matter of procedural [d]ue [p]rocess." Following review of the briefing and record in this case, we conclude that Mother's arguments regarding due process and an asserted right to speedy resolution are undeveloped, and we therefore do not consider them. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed.").

**{5}** Before we address Mother's arguments regarding Section 32A-4-19 and Rule 10-343, we initially note that the parties disagree about whether Mother's timeliness issue is preserved. Mother's counsel objected to the delay in proceedings during closing argument at the adjudicatory hearing, stating that Mother has a right to a "speedy adjudication" of the Petition, and requesting the Petition be dismissed. We conclude that Mother's counsel's statements during closing argument adequately fulfilled the purpose of the preservation rule because they alerted the district court to Mother's asserted error and included a request that the district court dismiss the Petition, which the court declined to do. *See Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791 (stating that the purpose of the preservation rule is, in part, "to specifically alert the district court to a claim of error so that any mistake can be corrected at that time," and "to create a record sufficient to allow this Court to make an informed decision regarding the contested issue").

**{6}** We review a district court's decision whether to dismiss an abuse and neglect petition for an abuse of discretion and review the district court's application of the children's court rules de novo. *State ex rel. Child., Youth & Fams. Dep't v. Tanisha G.*, 2019-NMCA-067, ¶ 10, 451 P.3d 86. In conformance with Section 32A-4-19(A), (D), an "adjudicatory hearing in a neglect or abuse proceeding shall be commenced within sixty days after the date of service on the respondent[,]" and "[w]hen the adjudicatory hearing on any petition is not commenced within [that sixty-day] time period . . . or within the period of extension granted, the petition shall be dismissed with prejudice." Rule 10-343 is consistent with Section 32A-4-19 and provides additional specific procedures for parties "seeking an extension of time to commence [an] adjudication[, as permitted by Section 32A-4-19, as well as] the remedies available to the district court in the event of noncompliance with the time limits." *Tanisha G.*, 2019-NMCA-067, ¶ 11. Under the rule, like Section 32A-4-19, an "adjudicatory hearing shall be commenced within sixty (60)

days" of "the date that the petition is served on the respondent[.]" Rule 10-343(A)(1). Rule 10-343(C) further specifies:

> The time for commencement of an adjudicatory hearing may be extended by the children's court for good cause shown, provided that the aggregate of all extensions granted by the children's court shall not exceed sixty (60) days, except upon a showing of exceptional circumstances. An order granting an extension shall be in writing and shall state the reasons supporting the extension.

Rule 10-343(E)(2), also like Section 32A-4-19(D), requires that "[i]n the event the adjudicatory hearing on any petition does not commence within the time limits provided in this rule, including any court-ordered extensions, the case shall be dismissed with prejudice."

**{7}** Here, the Petition was filed on June 5, 2017, and Mother was served with the Petition on June 12, 2017. The adjudicatory hearing was originally scheduled for August 1, 2017—well within the sixty-day requirement for commencement of adjudication proceedings under Rule 10-343—but on July 21, 2017, Mother filed a stipulated motion to continue the adjudication and agreement to extension of time. Mother's stipulated motion set forth, in pertinent part, that "the parties request that the [August 1, 2017] setting be vacated, that the time limits be extended by [sixty] days, and that the [c]ourt reset this case for an adjudication [sixty] days out." The district court granted Mother's motion by written order on July 21, 2017. The adjudication commenced on September 14, 2017—fifty five days into the sixty-day continuance requested by mother and granted by the district court—and took place over eleven different hearings through December 2, 2019.

**{8}** Following our review of the record, we find no violation by the district court of either Section 32A-4-19 or Rule 10-343. The adjudication commenced within the sixty-day period, required by both the statute and rule, following the district court's grant of Mother's stipulated motion to continue, which itself adhered to Rule 10-343's requirements as a written order in which the district court stated the reasons the extension was granted—namely that Mother's motion for continuance was supported by good cause and stipulated to by all parties. Indeed, neither Section 32A-4-19 nor Rule 10-343 contemplates a required timeline in which adjudication must be completed and resolved in a manner devoid of appropriate extensions. Further, to the extent Mother argues that resolution of the adjudication was delayed, in part, by the district court's initial grant of Mother's own stipulated motion to continue, we remind Mother that "[a] party who has contributed, at least in part, to perceived shortcomings in a [district] court's ruling should hardly be heard to complain about those shortcomings on appeal." *Cordova v. Taos Ski Valley, Inc.*, 1996-NMCA-009, ¶ 13, 121 N.M. 258, 910 P.2d 334. We therefore hold that the district court did not err in declining to dismiss the Petition due to the delayed resolution of the adjudication.

## II.    Substantial Evidence

**{9}** Mother argues that substantial evidence did not support the district court's findings that Child was abused and neglected. Specifically, Mother contends that CYFD failed to show that Child suffered actual harm due to Mother's "erratic behavior" or her expressed desire and attempts to breastfeed Child. "In order to [evaluate] claims of evidentiary sufficiency, we must determine whether the district court's decision is supported by substantial evidence of a clear and convincing nature." *State ex rel. Child., Youth & Fams. Dep't v. Alfonso M.-E.*, 2016-NMCA-021, ¶ 26, 366 P.3d 282. "For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Child., Youth & Fams. Dep't v. Shawna C.*, 2005-NMCA-066, ¶ 7, 137 N.M. 687, 114 P.3d 367 (internal quotation marks and citation omitted). "We indulge all reasonable inferences in support of the district court's decision and disregard all inferences or evidence to the contrary." *State ex rel. Child., Youth & Fams. Dep't v. Cosme V.*, 2009-NMCA-094, ¶ 19, 146 N.M. 809, 215 P.3d 747 (alterations, internal quotation marks, and citation omitted). Our task is not to "reweigh the evidence." *In re Termination of Parental Rights of Eventyr J.*, 1995-NMCA-087, ¶ 3, 120 N.M. 463, 902 P.2d 1066. Instead, our inquiry is "narrow[,]" and limited to considering "whether, viewing the evidence in the light most favorable to the prevailing party, the fact[-]finder could properly determine that the clear and convincing evidence standard was met." *Id.*

**{10}** Under Sections 32A-4-2(B)(1),(4), an "abused child" is defined, in pertinent part, as a child "who has suffered or who is at risk of suffering serious harm because of the action or inaction of the child's parent, guardian or custodian"; or "whose parent, guardian or custodian has knowingly, intentionally or negligently placed the child in a situation that may endanger the child's life or health[.]" "In order to [evaluate] claims of evidentiary sufficiency, we must determine whether the district court's decision is supported by substantial evidence of a clear and convincing nature." *Alfonso M.-E.*, 2016-NMCA-021, ¶ 26. Under Section 32-A-4-2(G)(2), a "neglected child" is defined, in pertinent part, as a child "who is without proper parental care and control or subsistence, . . . medical or other care or control necessary for the child's well-being because of the faults or habits of the child's parent . . . or the failure or refusal of the parent, . . . when able to do so, to provide them[.]" To find that a child has been neglected, the district court must conclude that there is clear and convincing evidence of the parent's "culpability through intentional or negligent disregard of [the child's] well-being and proper needs." *State ex rel. Child., Youth & Fams. Dep't v. Michelle B.*, 2001-NMCA-071, ¶ 17, 130 N.M. 781, 32 P.3d 790.

**{11}** Here, Mother challenges the district court's findings that Child was abused and neglected as well as the following specific factual findings: (1) "[a]fter being advised of the risk in breastfeeding, [Mother] was found breastfeeding [C]hild"; (2) "[w]hile [C]hild was in the hospital, [Mother] exhibited erratic behavior around the care of her newborn child"; (3) Mother's "erratic behavior placed [C]hild in a situation that could endanger [C]hild's life or health"; (4) Mother "did not follow through with the hospital[']s requests for education and testing to show she had a commitment to ensuring the safe care of [C]hild"; (5) "[t]he hospital could not release [C]hild to [Mother] as [Mother] was an

unsafe caregiver for [C]hild"; (6) Mother "did not do what the hospital required to show she could meet the needs of [C]hild and [Mother] did not demonstrate she could meet the needs of [C]hild"; (7) Mother "voluntarily agreed to allow [C]hild to live with someone she knew while [CYFD] agreed to provide the services she would need to address the safety risks of her caring for [C]hild"; (8) Mother's "erratic behaviors continued to pose a threat to her care of the child"; (9) Mother "did not engage sufficiently with services to ever determine [whether] substance abuse, mental health, or both, were causing the behaviors that caused her to be unsafe"; and (10) Mother's "erratic behaviors included . . . being incoherent[, ]switching from extreme highs in mood to extreme lows in mood within minutes[, ]shaving her head when asked to participate in a hair follicle drug test[, ]believing everyone was persecuting her," and "appearing to be disconnected from reality."

{12}   While Mother takes issue with particular findings by the district court, we need not make any specific determination with respect to each finding of abuse and neglect. *See In re Eventyr J.*, 1995-NMCA-087, ¶ 14 (affirming a district court's finding of neglect based on the combined effect of multiple failures to provide appropriate parental care and control). Instead, following our review of the record, we conclude that the combined effect of Mother's conduct supports the district court's finding of abuse and neglect, as well as the particular factual findings with which Mother takes issue, by clear and convincing evidence.

{13}   Here, evidence was presented that both Mother and Child tested positive for methamphetamine. Based on the results of those drug tests, a report was made to CYFD. Following CYFD's involvement, Mother exhibited erratic and irrational behavior—including stating there was a camera in her eye and a movie was going to be made from the footage her eye-camera was capturing—and repeatedly denying any substance use. Upon request for Mother to complete a hair follicle test for substances, Mother shaved her head, gathered her shaved hair and placed it in a bag, and delivered that bag to the testing facility, stating that "if they think she is crazy, then she is going to show them that she is crazy."

{14}   Witnesses testified that Mother interfered with Child's medical care by attempting to block a nurse from getting to Child, attempting to breastfeed Child despite being given explicit direction that Child could not breastfeed, and attempting to leave the hospital with Child while Child was still being treated in the NICU. Further, Mother stated she intended to breastfeed Child upon discharge from hospital despite concerns from medical staff that breastfeeding could remain harmful to Child.

{15}   Mother did not visit Child in the NICU consistently, and during some of her visits she disrupted Child's sleep. Following Child's discharge from the hospital, Mother planned to live with Child in a trailer on the property of a friend's job site where the friend worked as a construction superintendent. Because of the friend's work schedule, this arrangement would have necessarily meant that Mother had unsupervised time with Child, which was not permitted under Child's care plan. Mother resisted CYFD's requests to participate in evaluations, counseling, and treatment. Mother did not fully

participate in CYFD's in-home services and treatment plans, in part because she thought there was a conspiracy against her.

**{16}** Based on the evidence presented, we conclude a reasonable fact-finder could find by clear and convincing evidence that (1) Mother, because of her faults or habits, or her failure or refusal when able to do otherwise, did not provide the care or control necessary for Child's well-being; and (2) Child was at risk of suffering serious harm because of the actions and inactions of Mother, who placed Child in a situation that endangered Child's life or health. Viewing the evidence in the light most favorable to CYFD, we conclude that substantial evidence of a clear and convincing nature supports the district court's finding that Mother abused and neglected Child, pursuant to Section 32A-4-2(B)(1), (4),(G)(2).

### III.    Admission of Evidence Regarding Mother's Drug Tests

**{17}** Mother argues the district court erred in admitting evidence of Mother's drug test because testifying witnesses neither ordered nor performed the drug tests, and therefore "could not provide a sufficient foundation about the reliability of the tests performed." Mother further contends "that witnesses' hearsay testimony regarding" Mother's drug use violated her "right to confront her accuser[.]" Mother's latter contention is undeveloped, and we decline to consider it. *See Corona*, 2014-NMCA-071, ¶ 28. We therefore proceed to our review of Mother's primary argument regarding the admission of mother's drug tests.

**{18}** We review the admission or exclusion of evidence by a district court under an abuse of discretion standard. *See In re Augustine R.*, 1998-NMCA-139, ¶ 11, 126 N.M. 122, 967 P.2d 462. The district court clarified that it relied on testimony related to Mother's drug tests to establish Child's course of treatment in the hospital and to show why CYFD had become involved with Mother. Further, following Mother's closing argument, the district court reiterated that it was not making any findings based upon Mother's purported positive drug tests. Indeed, the relevant finding with which Mother takes issue states: "[C]hild's medical providers testified that they ordered [Mother] not to breastfeed [C]hild . . . due to the results of the tests they had order[ed], if [Mother] breastfe[d Child, Child] would be at great risk of harm." Mother contends that this finding proves that the district court proceeded to "wear[] its hat as the trier of fact" and rely on testimony about Mother's drug test results for their substantive truth. We disagree. The finding omits the nature of the test results and focuses solely on the effect such results had on the course of treatment ordered for Child, which included a restriction on Mother's breastfeeding of Child. Mother provides no evidence that the district court substantively relied on testimony regarding the results of Mother's drug tests, merely arguing that such was the case, and our own review of the district court's findings reveals no indication that it relied on such testimony. The argument of counsel is not evidence, *Chan*, 2011-NMCA-072, ¶ 9, and without some proof that the district court impermissibly exceeded its scope of reliance on testimony regarding Mother's drug tests, we can assign no error on the part of the district court. We therefore hold the

district court did not abuse its discretion in admitting evidence of Mother's drug tests to establish Child's course of treatment and CYFD's involvement with Mother and Child.

**CONCLUSION**

**{19}**   For the reasons stated above, we affirm.

**{20}   IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**