This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-39851**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

       Petitioner-Appellee,

v.

**STARR O.,**

       Respondent-Appellant,

and

**MIGUEL O. and JAMES P.,**

       Respondents,

**IN THE MATTER OF DAIYANDALIAH O.,
DAVION O., NEIVANAH O., and DYLAN D.,**

       Children.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY
Allen Smith, District Judge**

Children, Youth & Families Department
Mary McQueeney, Chief Children's Court Attorney
Robert Retherford, Children's Court Attorney
Santa Fe, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

Nicoleta Spilca
Albuquerque, NM

Sherrie L. Trescott
Rio Rancho, NM

Guardians Ad Litem

**DECISION**

**HANISEE, Chief Judge.**

**{1}** Respondent (Mother) appeals the district court's adjudication that her four children (Children) were neglected pursuant to NMSA 1978, Section 32A-4-2(G)(2) (2018). Mother argues that (1) as a matter of law and fact, Children were not neglected, and (2) that she was denied due process and received ineffective assistance of counsel because she was not permitted to attend her hearings in person and was therefore unable to communicate with her counsel in person. For the reasons that follow, we affirm.

**BACKGROUND**

**{2}** Mother has four children ranging in age from fifteen to eighteen months old (at the time the neglect/abuse petition was filed): (1) Child 1 (Teenager), born October 15, 2004; (2) Child 2, born November 10, 2011; (3) Child 3, born September 28, 2012; and (4) Child 4 (Toddler), born August 30, 2018. The Children, Youth and Families Department (CYFD) filed a neglect/abuse petition on February 18, 2020, alleging that Mother neglected Children under Section 32A-4-2(G)(2). CYFD alleged that on February 15, 2020, Valencia County Sherriff's Deputy Amanda Richards (Deputy Richards) responded to a report that two children—Child 2 and Child 3, then ages eight and seven, respectively—were walking along Highway 47. When Deputy Richards approached Child 2 and Child 3, they explained that they had run away. Shortly after finding them, Deputy Richards contacted CYFD and on-call CYFD worker Klarissa Mier responded. Mier interviewed Child 2 and Child 3 individually, and approximately four hours after Deputy Richards found Child 2 and Child 3, Mier contacted Mother. Thereafter, Deputy Richards and Mier visited Mother's residence to conduct an investigation regarding the welfare of Children. Through this investigation, CYFD learned that Child 2 and Child 3 ran away after Mother became angry with Toddler for breaking Mother's marijuana pipe and that because of an outstanding warrant for Teenager, then age fifteen, Mother did not permit Teenager to live with Mother and his siblings.

**{3}** The district court held adjudicatory hearings on CYFD's neglect petition over five settings from April 2020 to January 2021, each of which Mother attended virtually as the proceedings were subject to the Supreme Court's Public Health Emergency Protocols

(the Supreme Court Order) promulgated in response to the COVID-19 pandemic.[1] Ultimately, the district court found that Children were neglected pursuant to Section 32A-4-2(G)(2) and specifically found that (1) Mother's "residence was unsuitable for [C]hildren to live in"; (2) Toddler was able to access Mother's marijuana pipe and break it; (3) Child 2 and Child 3 were left "unattended for an extended period of time . . . during which . . . they walked alone for approximately three miles along busy streets [and] across a number of busy intersections"; (4) and Mother "was neglectful toward [Teenager] by not providing [him] with safe and stable housing and did not help or have him deal with his warrants."

## DISCUSSION

### I.    Substantial Evidence Supports the District Court's Finding of Neglect

{4}    Mother argues that "as a matter of law and fact" Children were not neglected because "some of the asserted grounds for a charge of neglect, even if the facts are accepted as true, do not support the charge as a matter of law." Although Mother contends that we should review the district court's order de novo, we decline to do so given that Mother's appeal effectively challenges whether the district court's finding of neglect is supported by substantial evidence. Therefore our task is to "determine whether the district court's decision is supported by substantial evidence of a clear and convincing nature." *State ex rel. Child., Youth & Fams. Dep't v. Alfonso M.-E.*, 2016-NMCA-021, ¶ 26, 366 P.3d 282. "For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Child., Youth & Fams. Dep't v. Shawna C.*, 2005-NMCA-066, ¶ 7, 137 N.M. 687, 114 P.3d 367 (internal quotation marks and citation omitted). "We indulge all reasonable inferences in support of the district court's decision and disregard all inferences or evidence to the contrary." *State ex rel. Child., Youth & Fams. Dep't v. Cosme V.*, 2009-NMCA-094, ¶ 19, 146 N.M. 809, 215 P.3d 747 (alterations, internal quotation marks, and citation omitted). Our task is not to "reweigh the evidence." *In re Termination of Parental Rights of Eventyr J.*, 1995-NMCA-087, ¶ 3, 120 N.M. 463, 902 P.2d 1066. Instead, our inquiry is "narrow," and limited to considering "whether, viewing the evidence in the light most favorable to the prevailing party, the fact[-]finder could properly determine that the clear and convincing evidence standard was met." *Id.*

{5}    Under Section 32A-4-2(G)(2), a "neglected child" is defined, in pertinent part, as a child "who is without proper parental care and control or subsistence, . . . medical or

---

1On March 11, 2020, the COVID-19 pandemic was declared a public health emergency in New Mexico. *See* State of N.M., Executive Order 2020-004 (March 11, 2020), https://cv.nmhealth.org/wp-content/uploads/2020/03/Executive-Order-2020-004.pdf. On April 16, 2020, the New Mexico Supreme Court set forth Order No. 20-8500-013, which provides, in relevant part, "[a]ll judges shall use telephonic or audio-visual attendance for court appearances by attorneys, litigants, witnesses, and the press unless there is an emergency need for an in-person appearance upon motion of a party." Supreme Court Order No. 20-8500-013, 4 (April 16, 2020), https://www.nmcourts.gov/wp-content/uploads/2020/12/Order-No-20-8500-013-Updating-and-Consolidating-Precautionary-Measures-for-Court-Operations-in-NM-Judiciary-4-16-20.pdf.

other care or control necessary for the child's well-being because of the faults or habits of the child's parent . . . or the failure or refusal of the parent, . . . when able to do so, to provide them." To find neglect, the district court must conclude that there is clear and convincing evidence of the parent's "culpability through intentional or negligent disregard of [the child's] well-being and proper needs." *State ex rel. Child., Youth & Fams. Dep't v. Michelle B.*, 2001-NMCA-071, ¶ 17, 130 N.M. 781, 32 P.3d 790.

**{6}** Here, Mother contends that Children were not neglected under Section 32A-4-2(G)(2) as a matter of law and specifically challenges the district court's findings that (1) "[C]hildren had access to all of the house, and . . . the house was not safe for [C]hildren"; and (2) Child 2 and Child 3 "were endangered because [Mother] did not call the police." While Mother takes issue with particular findings by the district court, we need not make any specific determination with respect to each finding of abuse and neglect. Instead, following our review of the record, we conclude that the combined effect of Mother's conduct supports the district court's finding of neglect by clear and convincing evidence. *See Eventyr J.*, 1995-NMCA-087, ¶¶ 14, 21, 24 (affirming a district court's finding of neglect based on the combined effect of multiple failures to provide appropriate parental care and control). We explain, and consider the district court's findings first as they relate to Mother's residence and secondly as they pertain to each of Mother's Children.

### Mother's Residence

**{7}** Deputy Richards testified that when she visited Mother's residence on February 15, 2020, it was "dirty [and] unsanitary," stained "mattresses were thrown on the floor with springs exposed," used "feminine sanitary napkins and hygiene products . . . were observed on the floor," and "food that was going bad in the fridge." According to Deputy Richards "it appeared that the [C]hildren had access to all areas of the home and there was no safe place for [Toddler] to play. Mier similarly testified that there were dirty clothes and trash scattered throughout the residence, food containers and spoiled food in Child 2 Child and 3's shared bedroom, and spilled food in the kitchen, which had a foul odor. Mier further testified that the bathtub was filled with clothes and toilet paper, trash, and used feminine hygiene products were scattered on the floor, toilet, and sink. The district court ultimately determined that Mother's "residence was unsuitable for [C]hildren."

**{8}** To the extent that Mother contends that "lifestyle alone" and "stereotyped values" do not support a charge of neglect, Mother does not point to any specific evidence or district court finding that references or relies upon stereotypes. *See Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)). Additionally, Mother's argument that "the testimony that the house was dangerous was based purely on a prediction of potential future harm" and therefore does not support a charge of neglect, is unpersuasive. Unsanitary living conditions may form the basis of neglect. *See, e.g., Child., Youth & Fams. Dep't v. Frank G.*, 2005-NMCA-026, ¶ 2, 137 N.M. 137, 108 P.3d 543 (explaining that the home's "unsafe, unsanitary, and

uninhabitable home" contributed in part to the neglect); *Cosme V.*, 2009-NMCA-094, ¶¶ 15, 20 (holding that the "district court could determine by clear and convincing evidence that the [c]hildren were without proper parental care and control" based in part on allegations that the condition of their residence was unsatisfactory).

**{9}** Moreover, "while the [district] court may not speculate as to the future care of a child, the court is not required to refrain from taking action until the child suffers an injury." *State ex rel. Dep't of Hum. Servs. v. Williams*, 1989-NMCA-008, ¶ 29, 108 N.M. 332, 772 P.2d 366. Based on the testimony of Deputy Richards and Mier regarding the condition of the residence—including the Children's exposure to used feminine napkins, expired food, and spring-exposed mattresses—the district court's conclusion that Mother neglected Children because she was culpable in providing a "residence [that] was unsuitable for her [C]hildren to live in" is supported by clear and convincing evidence. *See Michelle B.*, 2001-NMCA-071, ¶ 17.

**Toddler**

**{10}** Evidence was presented that on February 15, 2020, Mother became upset because Toddler accessed and then broke Mother's marijuana pipe. During their interviews, Child 2 and Child 3 told CYFD that Mother blew marijuana smoke "into [Toddler's] face to sedate her"—a claim Mother denied during her adjudication. A hair-follicle test was conducted on Toddler during the course of CYFD's investigation and returned positive for marijuana exposure. Further, when CYFD attempted to take Toddler into care, Mother became agitated and hostile and refused to provide any additional clothing for Toddler. It was additionally determined that the only car seat Mother had was for a newborn child and was not age appropriate for Toddler.

**{11}** To the extent Mother asserts that her marijuana use alone is insufficient to support a charge of neglect absent harm to the child, we agree. *See Shawna C.*, 2005-NMCA-066, ¶ 30 (explaining that while unfavorable personal status, such as drug addiction, "may well lead to neglect . . . the focus should be on the acts or omissions of the parents in their caretaking function"). However, the evidence presented—including Toddler's apparent access to Mother's marijuana pipe and positive hair-follicle test— focused on Mother's acts and omissions and not on her personal status.

**Child 2 and Child 3**

**{12}** The district court's finding of neglect of Child 2 and Child 3 focuses on Mother's actions on February 15, 2020. Evidence was presented that Child 2 and Child 3 packed a bag, left Mother a note, crawled out their window, and walked alone for approximately three miles across busy streets and a four-lane highway. Although Mother asked Teenager to search for them after discovering they were missing, she did not contact law enforcement or request the help of another adult in her search.[2] After being told that

---

2Mother urges us to consider the conduct of Deputy Richards and Mier in failing to notify Mother that Child 2 and Child 3 had been found, and asserts that CYFD has a duty to deal with parents with "scrupulous fairness." In making this argument, Mother cites *Ronald A. v. State ex rel. Hum. Servs. Dep't*,

Child 2 and Child 3 were in CYFD custody, Mother requested that, if they did not wish to return home, they be placed into foster care to teach them a lesson, and stated that she did not want them placed with Toddler as she believed them to be bad influences. She further refused to provide additional clothing for Child 2 and Child 3.

**Teenager**

**{13}** The district found that Teenager had a warrant for his arrest related to a criminal juvenile case, and that Mother was aware of this warrant. The district court further found that Mother sometimes allowed Teenager to stay with her, but that he was not living with her at the time the neglect petition was filed. Although Mother generally knew that Teenager was living in "Rio Communities," Mother did not know where in that community he was currently living. Based on these facts, the district court concluded that Mother "was neglectful toward [Teenager] by not providing a 15[-]year[-]old boy with safe and stable housing" and failing to help him address his criminal case. Although Mother contends that "there is no evidence . . . that the home was dangerous for [Teenager]," the district court's finding was not based on the home being dangerous. Therefore, such argument as it pertains to Teenager is in our view irrelevant.

**{14}** Rather, the district court's determination that Mother was neglectful toward Teenager because she failed to provide him with "safe and stable housing" was premised upon clear and convincing evidence that Mother did not permit him to live with her because of his outstanding warrant and did not know the location of his residence when the neglect petition was filed. *See Cosme V.*, 2009-NMCA-094, ¶¶ 29-30 (affirming an adjudication of neglect where the "[f]ather made little effort to carry out his responsibility as a parent" and explaining that even when "a child is not living in [a parent's home]" the parent is not absolved "of the legal responsibility to be vigilant, to be involved and aware of what's taking place with [the child]" (internal quotation marks and citation omitted)).

**{15}** Based on the evidence presented, we conclude that a reasonable fact-finder could find by clear and convincing evidence that Mother, because of her faults or habits, or her failure or refusal when able to do otherwise, did not provide the care or control necessary for Children's well-being. *See* § 32A-4-2(G)(2); *Michelle B.*, 2001-NMCA-071, ¶ 17. Viewing the evidence in the light most favorable to CYFD, we conclude that substantial evidence of a clear and convincing nature supports the district court's findings that Mother neglected Children pursuant to Section 32A-4-2(G)(2).

---

1990-NMSC-071, ¶¶ 1, 3, 110 N.M. 454, 797 P.2d 243, in which our Supreme Court held that the father's right to due process in a termination of parental rights proceeding was violated by the state's failure to give notice of the proceeding to father's counsel in a related neglect case and explained that actions to terminate parental rights "must be conducted with scrupulous fairness." In citing *Ronald A.*, Mother fails to sufficiently analogize it to the facts at hand nor does she argue how the conduct of Deputy Richards and Mier that she asserts to be unfair impacts the district court's findings of neglect. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."). We, therefore, decline to further consider Mother's contention in this regard.

## II.    Mother Was Not Denied Due Process and Does Not Demonstrate Ineffective Assistance of Counsel

**{16}**    Mother contends that she was denied due process because, due to the Supreme Court Order, she was not permitted to attend her trial in person and was unable to communicate with her counsel in person throughout the adjudication. For these same reasons, Mother asserts that she received ineffective assistance of counsel.[3]

**{17}**    To receive an in-person hearing in 2020, Mother must have demonstrated an emergency need to appear in person under the Supreme Court Order. *See State v. Peru*, 2022-NMCA-018, ¶ 7, 508 P.3d 907 (explaining that under the Supreme Court Order, "the district court has discretion to require in-person appearances . . . when moved to do so by a party asserting an emergency need to appear in person"). On appeal, Mother does not assert that she demonstrated an emergency need nor does the record reveal that she argued such before the district court. Therefore, we can assign no error to the district court's compliance with the Supreme Court Order. *See Farmers, Inc. v. Dal Mach. & Fabricating Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 ("The presumption upon review favors the correctness of the [district] court's actions. [The a]ppellant must affirmatively demonstrate its assertion of error.").

**{18}**    Because we conclude that Mother has not demonstrated that she was denied due process, we only briefly consider Mother's ineffective assistance of counsel claim. To make a successful claim of ineffective assistance of counsel, Mother has the burden to establish the claim and is required to "show not only that trial counsel was ineffective, but that trial counsel's inadequacies prejudiced [her]." *See State ex rel. Child., Youth & Fams. Dep't v. William M.*, 2007-NMCA-055, ¶ 53, 141 N.M. 765, 161 P.3d 262 (internal quotation marks and citation omitted). Given our conclusion that pursuant to the Supreme Court Order, Mother must have demonstrated an emergency need to receive an in-person hearing, and the record reveals that Mother did not make such an argument before the district court, it necessarily follows that Mother must demonstrate that counsel's failure to demonstrate emergency need prejudiced her defense. She develops no such argument. Although Mother requests that we "remand for the limited purpose of an evidentiary hearing to allow Mother to establish prejudice," such remand would be a futile exercise given that Mother never demonstrated emergency need for an in-person hearing and fails to assert any related prejudice on appeal. *See Dylan J.*, 2009-NMCA-027, ¶ 39 (explaining that "an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance

---

[3]Mother additionally implies that substitution of her counsel during one of the adjudicatory hearings contributed to the ineffective assistance of her counsel. While Mother notes that, upon substitution, her newly appointed counsel "preserved the question concerning the failure of prior counsel to raise the issue of how to protect Mother's right to participate in the [hearing] during COVID," Mother does not further develop her argument that a substitution of counsel prejudiced her defense. *See State v. Dylan J.*, 2009-NMCA-027, ¶ 36, 145 N.M. 719, 204 P.3d 44 (explaining that to make a successful claim of ineffective assistance of counsel the defendant must "show that . . . counsel's performance was deficient and that the deficient performance prejudiced [the] defense"); *see also Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."). We, therefore, decline to further address this argument.

[of counsel]" and a "defendant makes a prima facie case . . . by showing that defense counsel's performance fell below the standard of a reasonably competent attorney and . . . the defense was prejudiced" (internal quotation marks and citations omitted)). For these reasons, we conclude that Mother fails to demonstrate that she was denied due process or received ineffective assistance of counsel.

**CONCLUSION**

**{19}** Because we hold that clear and convincing evidence supports the district court's finding that Mother neglected Children pursuant to Section 32A-4-2(G)(2), and Mother fails to demonstrate that she was denied due process or received ineffective assistance of counsel, we affirm.

**{20}   IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**JANE B. YOHALEM, Judge**